## Commonwealth v. Bahn

*Donald L. Reihart, District Attorney*, for Commonwealth.

*John D. Flinchbaugh, Assistant County Solicitor*, for county.

*David William Bupp, Harold N. Fitzkee, Jr.*, and *Daniel W. Shoemaker*, for respondents.

SHADLE, *P. J.*, April 1, 1975—Respondents are licensed professional bondsmen in York County. The district attorney has filed petitions alleging that the court has directed the forfeiture of certain bail bonds on which respondents were sureties, and that judgments have been entered against them on such bonds, which judgments respondents have failed to pay. Petitioner, therefore, prays that the licenses of respondents as professional bondsmen be suspended or revoked by reason of such default in payment.

The petitions allege that respondent Bahn furnished eight such bonds in amounts ranging from $500 to $2,500, for a total of $11,000, in criminal cases docketed from 1972 to 1973, on which judgments were entered in civil cases docketed in 1974; that respondent Heidlebaugh furnished 17 such bonds in amounts ranging from $500 to $5,000, for

a total of $23,100, in criminal cases, docketed from 1962 to 1973, on which judgments were entered in civil cases docketed from 1972 to 1974; and that respondent Saxe furnished 10 such bonds in amounts ranging from $500 to $5,000, for a total of $12,500, in criminal cases docketed from 1969 to 1973, on which judgments were entered in civil cases docketed from 1972 to 1974. In no instance have we been advised of the dates the bonds were filed, the dates they were forfeited or the dates on which judgments were entered thereon.

Only one of respondents, Saxe, filed an answer to the district attorney's petition. In it he alleged that certain unspecified bonds had been satisfied by defendants in question having been produced, that certain unspecified forfeited bonds had been remitted, and that certain unspecified judgments entered on certain bonds had been satisfied. He also alleged that, apparently all of, the bond forfeitures and judgments entered thereon were invalid because no notice has been given either to defendants or their sureties for defendants to appear on specified dates, because no notice had been given to the sureties of the default by defendants or of the forfeiture of the bonds, and because the sureties, therefore, had no opportunity to apprehend and produce defendants.

All three respondents thereupon filed in the same proceeding petitions to modify or remit the bond forfeitures and the judgments in question. Apparently, they seek total remission of all the bonds and satisfaction of all the judgments in question because of the lack of notice above referred to. In the alternative, they seek modification of the forfeiture of certain specified bonds to (a) the amounts of the fines and costs to which defendants had been sen-

tenced and had failed to pay; (b) the amounts of fines and costs to which defendants customarily have been sentenced for offenses of the type charged; and (c) the amounts of losses to the victims in charges of forgery and receiving stolen goods. The Commonwealth and York County have filed answers to only one of these petitions, although there is no indication in the record that the other petitions ever were served upon the district attorney or York County. In this unsatisfactory state of the record, we are uncertain whether the factual allegations of the petitioners regarding remission of some forfeitures, production of some defendants by some sureties, and the amounts involved are correct. We do note that respondent Heidlebaugh seeks remission of three bonds and judgments which the district attorney has not assigned as grounds for default.

A hearing was held at which no evidence was offered, but the parties stipulated to certain facts hereinabove referred to, and arguments of counsel were heard. Among other matters, it was agreed that none of the sureties had received notice of the dates on which their defendants were required to appear, of their failure to appear, nor of the forfeiture of the bonds in question.

I

We turn first to the issue of whether any of the bond forfeitures should be remitted or moderated, for if they are, respondents may not, in fact, be in default or may be able to correct the default by payment.

The authority of the court to remit or moderate forfeited bonds is governed by statute and by rule. The Act of December 9, 1783, 2 Sm. L. 84, sec. 2, 8

P.S. §171, authorizes courts to order forfeited recognizances "to be levied, moderated or remitted, on hearing the circumstances of the case, according to equity and their legal discretion." The Act of July 11, 1917, P.L. 802, sec. 1, as amended, 8 P.S. 177, provides that "In all cases where the county commissioners of any county shall collect . . . any money upon any forfeited recognizance . . . and where the defendant in such case . . . is subsequently apprehended and returned to the jurisdiction of the court, the county commissioners . . . shall upon order of court in any case, repay to the party from whom such money was collected the amount so collected on such forfeited recognizance, exclusive of all costs paid or incurred by the county in such proceeding." Pa.R.Crim.P. 4016(A)(1)(c), formerly Rule 4012, provides that ". . . the court may direct that a forfeiture be set aside upon such conditions as may be imposed if it appears that justice does not require enforcement of the forfeiture."

Both the Act of 1783, supra, and Pa.R.Crim.P. 4016, supra, therefore, make the issue of moderation or remission of forfeited bonds a matter of equity, justice and legal discretion. However, the criteria are not so vague and flexible as this. The Act of 1917, supra, authorizes repayment of a forfeited recognizance only ". . . where the defendant in such case . . . is subsequently apprehended and returned to the jurisdiction of the court . . ." The latest appellate court pronouncement on this subject appears in Commonwealth v. Public Service Mutual Insurance Co., 213 Pa. Superior Ct. 327 (1968), in the following language, pages 332-33:

" 'The bail obligates the surety to procure the appearance of the accused at the time designated, and

he is bound thereby. To be relieved therefrom, there must be an actual surrender,' [quoting Commonwealth v. Miller, 105 Pa. Superior Ct. 56] . . . once a forfeiture has been declared, and it is presumptively legal, and the surety or the principal seeks to have it avoided, it becomes encumbent [sic] on him or them to allege performance of their obligation under the bond before they shall become entitled to the advantage of any default on the part of the Commonwealth . . ."

This law has now been codified in Pa.R.Crim.P. 4016(B), which provides that "A surety may be exonerted by a deposit of cash in the amount of any forfeiture ordered or by timely surrender of a defendant in custody."

Of the bonds here involved, respondent Saxe alleges only that he produced an undesignated number of unidentified defendants on his ten bonds, and respondent Heidlebaugh alleges that he produced three identified defendants on his 17 bonds. We are unwilling to remit the forfeiture of any of the bonds here involved on the sole ground of the alleged production of defendants on the unsatisfactory record herein which we have referred to. As and when respondents shall properly petition for remission, setting forth with specificity the relevant facts, and shall serve such petitions on the district attorney and the county commissioners, we shall consider any such applications.

Respondents complain that notice was not given to defendants or the sureties of the dates defendants were required to appear, nor were the sureties notified of the defaults or the forfeitures. The form of the bond prescribed by Pa.R.Crim.P. 4006 and 4014, requires defendant to appear ". . . at all times as his presence may be required, ordered or di-

rected, until full and final disposition of the case . . ." This obligation speaks for itself. In the Public Service Mutual Insurance Co. case, supra, the Superior Court noted that it had ". . . refused to review the legality of the forfeitures . . . in cases in which sureties were not specifically notified of the date or place of trial, and other practices alleged to be prejudicial to sureties": Page 331. Consequently, the court held that ". . . the entry of a forfeiture stands for proof of all the steps necessary to complete the forfeiture . . . hence, it must be taken for verity that defendant and his bail were duly called and did not appear and answer."

However, we note that Pa.R.Crim.P. 4016(A)(1)(b) which became effective September 23, 1973, now provides that "Upon such declaration (of forfeiture of a bond for breach of a condition) written notice of such forfeiture shall be given to the surety either personally or by certified mail at his last known address." Its predecessor, Rule 4012, which was effective from June 1, 1966, to September 23, 1973, contained no such provision for notification of the surety of the forfeiture. Since none of the parties have advised us in this record of the dates any of the bonds in question were forfeited, we are unable to determine whether the sureties here were entitled to notice of the forfeitures.

In any event, there is no law providing that the sureties be notified of the requirement of their defendants to *appear* on stated dates, nor of the default of such defendants in *appearing*. On this state of the record, we are unwilling in this proceeding to remit or modify any of the forfeitures on the ground of lack of notice to the sureties. However, if and when the sureties shall present and serve prop-

erly prepared and documented petitions for remission as above indicated, and shall establish that on any bonds forfeited after September 23, 1973, they were not notified of the forfeitures as required by Pa.R.Crim.P. 4016, we shall give such petitions proper consideration.

In addition to seeking total remission of the bond forfeitures, the sureties here seek modification of the forfeitures under three sets of circumstances. They ask that instead of being liable for the face amounts of the bonds, their liability be limited to: (a) the amounts of the fines and costs to which defendants were sentenced but failed to pay; (b) the amounts of fines and costs which their unsentenced defendants "customarily" would be required to pay in similar cases if convicted and sentenced; and (c) the amounts of losses to victims of forgery or receiving stolen goods with which their defendants are charged.

Such proposals are totally unacceptable. One of the arguments submitted by these sureties for relief is that they should not be "punished" for their failure or inability to produce their defendants as they agreed by their bonds to do. Yet the precise effect of their proposed modifications would be to transfer to their own shoulders the very criminal sanctions which were imposed or might be imposed upon their defendants. To permit sentenced defendants to thus escape responsibility for their own derelictions negates the very philosophy and purpose of the criminal law. To thus financially penalize sureties of defendants who have not even been convicted or sentenced would encourage defendants to purchase criminal immunity by paying a bond premium to their sureties to assume the sanctions such defendants themselves incurred. To cate-

gorize criminal cases as ones in which certain fines or restitution "customarily" are ordered is to demean the court from a tribunal dispensing individualized justice into a mere monetary collection agency. The attempt by these sureties to minimize their financial responsibility is understandable. However, concern for their discomfort abates upon consideration of the substantial number of bonds written on a professional basis by the small number of these sureties for total premiums of very significant amounts, as compared with the relative few of such bonds which are forfeited. Presumably, the losses are covered by the profits.

In summary, we hold that under none of the circumstances here involved on this record are these sureties entitled to the modifications they seek in the bond forfeitures here involved. Future cases in which sureties may actually produce defaulting defendants, of which Commonwealth v. Doby, 1 D. & C. 2d 131 (Montg. 1954) and Commonwealth v. Roeschetz, 2 D. & C. 2d 168 (Montg. 1954), are examples, may present different circumstances. We likewise hold that on the facts now before us these sureties are not now entitled to remission of the forfeitures in question. However, we have left the way open for them to seek other relief upon a proper showing of circumstances entitling them thereto.

## II

The remaining question is whether the licenses of respondents as professional bondsmen should be suspended or revoked for their failure to pay the judgments entered on their forfeited bonds.

The Act of August 21, 1953, P.L. 1237, sec. 7(b), 19 P.S. §90.7, provides that "Any license . . . may be

suspended, by any court of quarter sessions . . . after a period less than the unexpired portion of the period for which such license shall have been issued, or may be revoked . . . (5) For failing to pay any judgment or decree rendered on any forfeited undertaking . . ."

We have hereinabove noted that the district attorney has agreed that these respondents received no notice of the dates on which their defendants were required to appear, of the failure of such defendants to appear as required, nor of the fact that the bonds in question were forfeited. For all that is revealed in this record, there is no indication that respondents were notified that judgments had been entered on the bonds, nor that any demand was made upon them for payment. Although executions could have been issued on the judgments, it is obvious that this has not been done. It is reasonable to conclude, therefore, that the instant petitions constituted the first notice to respondents of a demand for payment and of the fact that their licenses were in jeopardy.

To now summarily suspend or revoke such licenses under such circumstances would be unreasonable and unfair. In Part I of this opinion, we have indicated certain relief to which respondents may be entitled after proper proceedings and upon proper proof. We shall afford them a reasonable opportunity to avail themselves thereof. Should they neglect or fail to do so, adequate notice now having been given, instead of relegating the Commonwealth to execution proceedings on the judgments, we shall order the licenses of respondents as professional bondsmen to be revoked until they shall have satisfied their liability on all judgments entered on forfeitures of bonds which have not been remitted.

## ORDER

And now, April 1, 1975, it is ordered and decreed as follows:

1. The petitions of respondents herein to modify or remit the forfeitures of their bonds and the judgments entered thereon against them are refused, without prejudice to their right to proceed with respect thereto in a manner consistent with this opinion.

2. The petitions of the district attorney to suspend or revoke the licenses of respondents as professional bondsmen are at this time refused, upon condition that, within 30 days from this date, respondents shall properly file and serve appropriate applications for relief in a manner consistent with this opinion. Upon failure of respondents so to proceed, the petitions of the district attorney are granted on the basis of any judgments as to which relief shall not have been granted to respondents and which they shall fail to pay within 30 days from such failure to proceed or from such denial of relief, and thereupon the license of any such respondent shall be revoked for the unexpired portion of the period for which such license shall have been issued.

3. Exceptions are noted for all parties.